## Schusler *v.* Clark, Appellant.

*Deceit—Fraud—Contract to sell real estate—Tying up valuable property—Case for jury—Damages—Exemplary damages.*

1. In an action of trespass for deceit the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where there is evidence from which the jury can find that the defendant's conduct was deceitful and fraudulent, that he thereby secured a contract from plaintiff tying up valuable real estate for a considerable time, and that he subjected the plaintiff to annoyance, anxiety and considerable expense by holding the contract and refusing to surrender it while he well knew that he and his associates had obtained it by fraud and deceit.

2. In such a case the jury may award an amount sufficient to compensate the plaintiff in a reasonable measure for his trouble, vexation and annoyance, with an added amount by way of punishment to the defendant.

Argued April 10, 1912. Appeal, No. 40, April T., 1912, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1907, No. 542, on verdict for plaintiff in case

460        SCHUSLER *v.* CLARK, Appellant.

of George W. Schusler, Executor of the Will of Peter Schusler, deceased, v. L. A. Clark.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass for deceit.    Before SHAFER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $2,000, upon which judgment was entered for $750, all above that amount having been remitted.    Defendant appealed.

*Error assigned* was refusal of binding instructions for defendant.

*Levi Bird Duff*, with him *L. B. D. Reese*, for appellant.— In an action of deceit the scienter must not only be alleged but must be proved: Bokee v. Walker, 14 Pa. 139; Griswold v. Gebbie, 126 Pa. 353; Cox v. Highley, 100 Pa. 249; Dilworth v. Bradner, 85 Pa. 238; Graham v. Hollinger, 46 Pa. 55; Kern v. Simpson, 126 Pa. 42; Freyer v. McCord, 165 Pa. 539.

The measure of damages in all cases of fraud is compensation: Erie City Iron Works v. Barber, 102 Pa. 156; Cole v. High, 173 Pa. 590; High v. Berret, 148 Pa. 261.

*R. T. M. McCready*, for appellee, cited: Dennis v. Barber, 6 S. & R. 420; Harger v. M'Mains, 4 Watts, 418; McDonald v. Scaife, 11 Pa. 381; Cox v. Burdett, 23 Pa. Superior Ct. 346; Herdic v. Young, 55 Pa. 176; Morrison v. Robinson, 31 Pa. 456.

OPINION BY MORRISON, J., July 18, 1912:

This is an action of trespass founded on the alleged deceit and fraud of the defendant.

Peter Schusler was the original plaintiff and he died after bringing the suit and his executor, George W. Schusler, was brought upon the record as plaintiff.    Peter Schusler was the owner in fee of a valuable piece of

real estate, with brick building thereon, in June, 1906, and desiring to sell the same for $60,000, engaged the defendant, a real estate agent, to make the sale. On June 25, 1906, the defendant went to Schusler's house and obtained from him and his wife exclusive authority, in writing, for four days, to make a sale of the property for $60,000. The defendant immediately got into communication with William J. Bell and Simon Perelstine, both men of financial standing, with a view of selling the property to them. These men looked the property over and reported to the defendant that they would not give $60,000 but might consider a purchase at $55,000. Defendant again visited the Schuslers and, on June 26, 1906, obtained from them written authority for three days to sell the property at $55,000. The defendant alleged at the trial that Bell & Perelstine agreed to buy the property for $55,000 and defendant then drew an agreement of sale in triplicate and sent the papers by Zinn, his agent, to Perelstine for examination and execution. The latter on seeing the agreements stated that the name of the purchaser was wrong and told Zinn to take the agreements to Bell. Mr. Zinn took the agreements to Bell and the latter told him the agreement was to be made in the name of E. H. Croyle who was going into the deal with him and Perelstine and gave him Croyle's name on a slip of paper. He told Zinn that Croyle was a responsible person and that the deal would be carried out. He gave Zinn a check for $500 on account of the transaction. Mr. Zinn then returned to the defendant's office, had the agreements changed to the name of Croyle and took them to Perelstine and left them with him to be signed by Croyle which was done and on the next morning, June 28, 1906, Zinn obtained the agreements from Perelstine, signed by Croyle and took them to Mr. & Mrs. Schusler who signed them, Zinn telling them that Croyle was a responsible man and able to comply with the agreement. It turned out that Croyle was financially irresponsible and that he could not and did not take the property. Clark

refusing to pay over the hand money and surrender the contract on demand by Schusler's representative and having persisted in this for a considerable time this suit was brought and was tried twice in the court below and a final judgment entered in favor of the plaintiff for $750, and the defendant appealed to this court.

It appears from the testimony of Mr. Bell that he gave the $500 check to the defendant Clark personally: "Q. When you gave that check to Mr. Clark, what, if anything, did you say about taking the property? A. I gave Mr. Clark a card with the name of Mr. Croyle on, and told Mr. Clark Mr. Croyle was the buyer of the property, that Perelstine and I did not want to become responsible for the property. Q. What did you say, if anything, as to who Croyle was? A. I told him he was a clerk in the employ of Mr. Perelstine. Q. In Mr. Perelstine's shoe store? A. Yes, sir. Q. And you say you gave $500 as hand money on the property? A. Yes, sir. Q. Was anything said about whether or not this money would be forfeited if the sale did not go through, whether you were willing to risk it? A. I understood that the money was put up at a risk, simply as a gamble. Q. Did you so state to Mr. Clark? A. Yes, sir. Q. Did you ever afterwards endeavor to carry out this agreement, or did you enter into any agreement for the purchase of this property? A. No, sir."

On the evening of June 26 the defendant went to see Mr. and Mrs. Schusler, as he himself stated, and obtained the second option on the property for a period of three days. From the evidence the jury could find that Bell and Perelstine were merely gambling in the property to the extent of $500, and they could also find that the defendant knew this and that he knew Croyle was simply a clerk in a shoe store and that he was not financially responsible, and yet the defendant procured the contract of sale, dated June 27, 1906, signed by the Schuslers on the next day and bound the latter to sell the property to Croyle on or before August 15 following, and the jury

could also find that the defendant did not tell Mr and Mrs. Schusler that Bell and Perelstine were evading responsibility but he did tell them that Croyle was a moneyed man and well able to buy the property. The jury could further find that the defendant took advantage of the contract of June 27 and held it and refused to surrender it and that his conduct and management gave the plaintiff great trouble and annoyance and that he employed counsel and made a large number of trips to Clark's office, prepared a deed for the property and went to considerable trouble in trying to find Croyle for the purpose of tendering the deed. And during all this time Clark must have known where Croyle was and must have known that he was wholly irresponsible and that the plaintiff was being imposed upon in understanding, through defendant's representations, that Croyle was a responsible man and could and would pay for the property.

The defendant's first point asked for a binding instruction in his favor which was refused and this gives rise to the first assignment of error. We think there was sufficient evidence of deceit and fraud and of injury and expense imposed upon the plaintiff to carry the case to the jury, and, therefore, the first assignment is not sustained. In Griswold v. Gebbie et al., 126 Pa. 353, it was held as stated in the syllabus: "But when the plaintiff in such action (deceit) has proved that the defendant made a positive statement of a material fact which was relied upon, its falsity, and circumstances tending to show a reckless assertion in conscious ignorance of the fact, he has made a prima facie case, without direct proof of deceitful intent.

"The general rule that a principal is responsible for the misrepresentations of his agent within his authority, is beyond question; and the better opinion is that as to third parties affected by the agent's acts and words, it is the apparent scope of his authority, not his actual instructions, that must govern."

The second assignment complains of the court for

saying to the jury in the general charge: "As I understand, the plaintiff says there was no mention made at all of Bell & Perelstine to them, that no mention was made of Croyle, being merely represented to be a good man by Bell and Perelstine, but that it was said to them that Croyle was a man who was competent to take care of the transaction, in other words, was a solvent man and not a figurehead. On the other hand, the defendant says, that at the time he told them Croyle was a good man, he told them that that was his information and that he got that information from these two men. If it was as the plaintiff says, then the defendant, it seems to me, is liable to the plaintiff for whatever damages happened by his deceiving him in that way, and if it is as the defendant says, then the plaintiff is not entitled to recover anything and the verdict ought to be for the defendant." Now upon the testimony in the case and the inferences which the jury might legitimately draw therefrom we think this assignment is free from error. No question is raised about Zinn's authority to represent the defendant and if the latter, through Zinn, made the representations averred and testified to for the plaintiff, in regard to Croyle, and at the same time the defendant and his agent, Zinn, knew or ought to have known, that Croyle was not responsible and that the contract was made in his name for the purpose of giving Bell and Perelstine control of the property while they shirked responsibility, and if thereafter the defendant used the contract to embarrass and delay the plaintiff and to subject him to expense, annoyance and trouble, we cannot see that the court erred in saying to the jury that the defendant might be liable to the plaintiff for the damages caused by the deceit which was practiced upon him.

We do not discover any reversible error in the third assignment. It relates to the measure of damages and if the jury found the facts to which their attention was called by the court, in favor of the plaintiff, then we think the charge, as quoted in said assignment, is free from

error. It is a well-recognized principle of law that in an action founded in tort, fraud and deceit the plaintiff is not limited to the actual damages sustained. As to exemplary or vindictive damages the better doctrine seems to be that they are usually given as a punishment to the offender, for the benefit of the community and a restraint to the transgressor. Such damages are only given in cases where malice, fraud, or gross negligence enter into the cause of action: 13 Cyc. 106, etc. In actions of trespass and in all actions of trespass on the case for torts, a jury may inflict what are called exemplary, punitive or vindictive damages upon the defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff: 1 Sedgwick on Damages, 513. One of the early cases supporting exemplary damages is Dennis v. Barber, 6 S. & R. 420. That was an action in trover and the Supreme Court said: "In trover the value of the property is usually the measure of the damages; although the jury are justified in going further, wherever there has been outrage in the taking, or, as I apprehend, vexation or oppression in the retention." Harger v. M'Mains, 4 Watts, 418, is another case upholding the doctrine that a jury may impose damages beyond the value of the goods by way of compensation to the plaintiff and punishment to the defendant. In Herdic v. Young, 55 Pa. 176, AGNEW, J., said: "The analogy has been carried so far in this state that the settled doctrine in replevin is that exemplary damages may be given where there has been outrage in the taking or vexation or oppression in the retention." See also Kennedy et al. v. Erdman et al., 150 Pa. 427.

We think there was plenty of evidence from which the jury could find that the defendant's conduct was deceitful and fraudulent and that he thereby secured a contract from plaintiff tying up a valuable property for a considerable time and that he subjected the plaintiff to annoyance, anxiety and considerable expense by holding the contract and refusing to surrender it while he well knew

that he and his associates had obtained it by fraud and deceit. The jury could find that the plaintiff would not have executed and delivered the contract if he had not been led to believe that Croyle was responsible and able and willing to buy the property. In our opinion, the testimony warranted the jury in finding that the plaintiff suffered substantial damages and this would allow them to add exemplary or punitive damages thereto such as were warranted by the fraudulent, vexatious and oppressive acts of the defendant. In such circumstances the jury may award an amount sufficient to compensate the plaintiff, in a reasonable measure, for his trouble, vexation and annoyance, with an added amount by way of punishment to the defendant.

The jury assessed the damages at $2,000, but under the suggestion of the court this amount was reduced to $750, and inasmuch as we are convinced that the plaintiff was entitled to a substantial amount of actual damages, and considering the conduct of the defendant, we are not willing to reverse the judgment because some exemplary damages were probably included in the verdict.

We think the case was properly tried.

The assignments of error are all dismissed and the judgment is affirmed.